LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Proposed Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

In re:

MEDOLAC LABORATORIES, A PUBLIC BENEFIT CORPORATION,

    Debtor.

Case No. 21-11271-abl
Chapter 11

Date:  OST REQUESTED
Time:  OST REQUESTED

**DEBTOR'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 FOR AN ORDER DETERMINING THAT ADEQUATE ASSURANCE HAS BEEN PROVIDED TO UTILITY COMPANIES, AND FOR APPROVAL OF PROCEDURES**

    Medolac Laboratories, a Delaware public benefit corporation, as debtor and debtor in possession (the "Debtor" or "Medolac"), submits its emergency motion (the "Motion") pursuant to 11 U.S.C. §§ 105(a) and 366 for an order determining that adequate assurance has been provided to utility companies. This Motion is made and based on the points and authorities herein, the *Omnibus Declaration of Elena M. Medo in Support of Chapter 11 Petition, Initial Emergency Motions, and Related Relief* (the "Omnibus Declaration"), the papers and pleadings on file herein, judicial notice of which is requested, and any arguments of counsel entertained by the Court at the time of the hearing on this Motion.

. . .

. . .

. . .

**Introduction**

1. Medolac is a Delaware public benefit corporation ("PBC") with a principal place of business located at 1031 Boulder City Parkway, Boulder City, Nevada 89005. Medolac processes human milk products utilizing proven food-processing methods to produce the first sterile human milk-based nutrition that is shelf-stable at room temperature. Medolac was the first milk bank legally classified as a PBC. A more detailed description of the Debtor, its business, and its reasons for filing for bankruptcy is contained in the Omnibus Declaration.

2. On March 17, 2021 (the "Petition Date"), Medolac filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing its bankruptcy case (the "Chapter 11 Case"). The Debtor is a "small business debtor" pursuant to section 101(51D) of the Bankruptcy Code and has elected to proceed under Subchapter V. The Debtor is authorized to continue operating its business as a debtor in possession pursuant to sections 1182 and 1184 of Subchapter V of chapter 11 of the Bankruptcy Code. Brian D. Shapiro has been appointed as Subchapter V trustee for the Debtor's Chapter 11 Case [ECF No. 7].

**Jurisdiction and Venue**

3. The Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 1001(b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to LR 9014.2, the Debtor consents to the entry of final orders and judgments by the bankruptcy judge. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

**Statement of Facts**

4. In the ordinary course of operating the Debtor's business, the Debtor incurs utility expenses for water and sewer, electricity, natural gas, and waste management. In particular, the Debtor has an approximately 47,000 square foot facility that includes multiple large walk-in refrigerators and other large equipment used in the storage and processing of its raw materials and products. These utility services are provided by the utilities (as such term is used in section 366 of the Bankruptcy Code, collectively, the "Utility Providers"), and inclusive of water/sewer,

electric, natural gas, internet, telephone, and waste removal. On average, the Debtor expends approximately $9,000.00, in the aggregate, each month on utility costs. As of the Petition Date, the Debtor is current on nearly all of its utility obligations owed to its current utility providers, and except for accrued amounts with other utility providers that have not been billed as of yet. Additionally, the Debtor already has an $800.00 balance on deposit with Southwest Gas, and a $845.00 balance on deposit with The City of Boulder City (for electric and water/sewer). Accordingly, the Debtor has some existing deposits on hand that provide certain utility vendors with adequate protection.

5.      Preserving utility services on an uninterrupted basis is essential to the Debtor's ongoing operations and, therefore, to the success of its reorganization. Any interruption of utility services, even for a brief period of time, would disrupt the Debtor's ability to continue maintaining its stores, thereby negatively affecting customer relationships, revenues and profits. Such a result could jeopardize the Debtor's reorganization efforts and, ultimately, value and creditor recoveries. It is therefore critical that utility services continue uninterrupted during the Chapter 11 Case.

6.      The Debtor intends to pay its post-petition utility obligations owed to the Utility Providers in a timely manner and keep them current on a go forward basis from and after the Petition Date. The Debtor expects that it will have access to such funds from operations, as well as access to debtor in possession financing to pay post-petition obligations to the Utility Providers. Given the monthly obligations to Utility Providers, the Debtor asserts that there is no need to provide any additional assurance of payment for future services to the Utility Providers that did not hold deposits from the Debtor on the Petition Date.

7.      Given the long account history, and the monthly obligations to the Utility Providers, the Debtor asserts that there is no need to provide any additional assurance of payment for future services to the Utility Providers who did not hold deposits from the Debtor on the Petition Date.

8.      Notwithstanding the Proposed Adequate Assurance for the Utility Providers, if the Utility Providers are not satisfied that they have received adequate assurance of future

payment, the Debtor proposes the following procedures (the "Procedures") under which such dissatisfied Utility Provider may make additional requests for adequate assurance:

  a. If a Utility Provider is <u>actually served with the order approving this Motion, which service of the order shall be within two (2) days of its entry</u>, is not satisfied with the assurance of future payment provided by the Debtor, the Utility Provider must serve a detailed written request (a "Request") so that it is actually received within fifteen (15) days of the date of the entry of the order granting this Motion (the "Request Deadline") requesting what additional protections it believes are necessary and appropriate under the circumstances.

  b. Without further order of the Court, the Debtor may enter into agreements granting additional adequate assurance to a Utility Provider serving a timely Request if the Debtor, in its discretion, determines that the Request is reasonable or if the parties negotiate alternate consensual provisions.

  c. If the Debtor believes that a Request is unreasonable, the Debtor shall file a motion pursuant to section 366(c) of the Bankruptcy Code (a "Determination Motion") within fifteen (14) days after the Request Deadline. The Determination Motion shall seek a determination from the Court that the Utility Deposit account, plus any additional consideration offered by the Debtor, constitutes adequate assurance of payment. Pending notice and a hearing of the Determination Motion, the Utility Provider that is the subject of the Determination Motion may not alter, refuse or discontinue services to the Debtor, or recover or set off against a prepetition deposit.

  d. Any Utility Provider <u>actually and timely served with the order approving this Motion</u> that fails to make a timely Request shall be deemed to be satisfied that the Debtor's Deposits and Proposed Adequate Assurance provides adequate assurance of payment to such Utility Provider within the meaning of section 366 of the Bankruptcy Code, and shall further be deemed to have waived any right to seek additional adequate assurance during the course of this Chapter 11 Case.

9. The Debtor further requests that all Utility Providers be prohibited from altering,

refusing, or discontinuing utility services to the Debtor absent further order of the Court.

**Legal Authority**

10. Section 366(c)(2) of the Bankruptcy Code, as amended in 2005, addresses utility services to a Chapter 11 debtor. See 11 U.S.C. § 366(c)(2). Specifically, section 366(c)(2) of the Bankruptcy Code provides that a utility may alter, refuse, or discontinue service if, within thirty (30) days after a Chapter 11 filing, such utility has not received an adequate "assurance of payment" that is satisfactory to the utility. See 11 U.S.C. § 366(c)(2).

11. Section 366(c)(1)(A) of the Bankruptcy Code provides that the term "assurance of payment" means: "(i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility consumption; or, (vi) another form of security that is mutually agreed on between the utility and the debtor or trustee." Id. § 366(c)(1)(A). Thus, since section 366(c) of the Bankruptcy Code specifies the form of assurance that will be deemed adequate, a determination of the amount of assurance that must be provided falls squarely within the court's discretion. See id. § 366(c)(3)(A) ("A court may, after request of a party in interest and after notice and hearing, modify the amount of adequate assurance payment required."); see also In re Haven Eldercare, LLC, No. 07-32720, 2008 WL 139543, at *2 (Bankr. D. Conn. Jan. 10, 2008) (court modified the amount of adequate assurance to equal a cash deposit in an amount equal to that debtor's average monthly invoice over the last 12 months); In re Viking Offshore (USA) Inc., No. 08-31219-H3-11, 2008 WL 782449, at *3 (Bankr. S.D. Tex. Mar. 20, 2008) ("The structure of Section 366 is such that, if [d]ebtors are unable to provide an offer of adequate assurance satisfactory to the utility, the utility may insist on a different amount, subject to a determination by the court.").

12. While the court has discretion in determining the amount of assurance, such discretion is not limitless. Section 366(c)(3)(B) of the Bankruptcy Code lists certain factors that a court may not consider. Specifically, courts may no longer consider: (i) the absence of a security deposit before a debtor's petition date; (ii) a debtor's history of timely payments; or (iii) the availability of an administrative expense priority.

13. Nonetheless, a court's discretion under section 366(c) of the Bankruptcy Code is

nearly identical to the discretion it has under section 366(b).  Compare 11 U.S.C. § 366(b) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment"), with 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2).").

14. Courts construing section 366(b) of the Bankruptcy Code have long recognized that adequate assurance does not constitute an absolute guaranty of the debtor's ability to pay. See In re Steinebach, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance. . . . a Bankruptcy Court is not required to give a [Utility Provider] the equivalent of a guarantee of payment, but must only determine that the utility is not subject to any unreasonable risk of non-payment for postpetition services.") (citing In re Adelphia Bus. Solutions, Inc., 280 B.R. 63, 80 (S.D.N.Y. 2002); see also Va. Elec. & Power Co. v. Caldor, Inc.-N.Y. (In re Caldor, Inc.-N.Y.), 199 B.R. 1, 3 (S.D.N.Y. 1996), aff'd, 117 F.3d 646 (2d Cir. 1997) ("Section 366(b) requires a Bankruptcy Court to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment.  The statute does not require an 'absolute guaranty of payment.'").

15. Courts have recognized that, in analyzing the requisite level of adequate assurance, they should "focus upon the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources."  Caldor, Inc.-N.Y., 117 F.3d at 650 (citing In re Penn Jersey Corp., 72 B.R. 981 (Bankr. E.D. Pa. 1987)).

16. It is also well-established that section 366(b) of the Bankruptcy Code permits a court to find that no adequate assurance payment whatsoever may be required.  See id. at 650 ("Even assuming that 'other security' should be interpreted narrowly, . . . a bankruptcy court's authority to 'modify' the level of the 'deposit or other security' provided for under § 366(b), includes the power to require 'no deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'").  This principle may be applicable in

6

cases where the debtor has made prepetition deposits or prepayments for services that utilities will ultimately render post-petition. See 11 U.S.C. § 366(c)(1)(A)(v) (recognizing a prepayment for post-petition services as adequate assurance). Accordingly, even after BAPCPA's revisions to section 366 of the Bankruptcy Code, courts continue to have discretion to determine the amount of adequate assurance payments and, where appropriate, to determine that no such payment is necessary.

17. The Debtor believes it will have sufficient resources to pay, and intends to pay, all valid post-petition utility obligations for utility services in a timely manner. In addition, the Debtor has a powerful incentive to stay current on its utility obligations because of the Debtor's reliance on utility services for the operation of its cleaning and sanitizing equipment. These factors, which the Court may (and should) consider when determining the amount of any adequate assurance payments, justify a finding that no adequate assurance payment is required in this Chapter 11 Case (the "Proposed Adequate Assurance"). In light of the foregoing, the Debtor respectfully submits that the Proposed Adequate Assurance for the Utility Providers are more than sufficient to assure the Utility Providers of future payment.

18. Moreover, if a Utility Provider disagrees with the Debtor's analysis, the Procedures will enable the parties to negotiate and, if necessary, seek Court intervention without jeopardizing the Debtor's continuing operations. If a Utility Provider fails to timely file a Request in accordance with the Procedures, however, such Utility Provider shall be deemed to consent to the Procedures and shall be bound by any order approving this Motion. See In re Syroco, Inc., No. 07-04091, 2007 WL 2404295, at *2 (Bankr. D.P.R. 2007) (a utility provider's lack of objection, response or counter-demand after receiving notice of hearing on utilities motion, notice of interim order and notice of final hearing constitutes tacit acceptance of the debtor's Proposed Adequate Assurance.

19. The proposed Procedures are necessary for the Debtor to carry out its reorganization efforts. If such Procedures are not approved, the Debtor could be forced to address a volume of requests by its Utility Providers during the critical first weeks of its reorganization. Moreover, the Debtor could be blindsided by a Utility Provider unilaterally

deciding--on or after the 30th day following the Petition Date--that it is not adequately protected and discontinuing service or making an exorbitant demand for payment to continue service. Discontinuation of utility service would force operations to cease, and such disruption of operations could place the Debtor's reorganization efforts in jeopardy.

### Reservation of Rights

20. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtor expressly reserves its rights to contest any invoice of a Utility Provider under applicable non-bankruptcy law. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

. . .

. . .

. . .

8

**Conclusion**

WHEREFORE, the Debtor requests that the Court grant this Motion, thereby: (i) determining that its Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code; (ii) approving the Debtor's proposed Procedures whereby Utility Providers may request additional or different adequate assurance; (iii) prohibiting the Utility Providers from altering, refusing, or discontinuing services on account of prepetition amounts outstanding and on account of any perceived inadequacy of the Debtor's Proposed Adequate Assurance; (iv) determining that the Debtor is not required to provide any additional adequate assurance beyond what is proposed by this Motion; and (v) granting the Debtor such other and further relief as is just and proper.

Dated: March 18, 2021.

By:  /s/ Matthew C. Zirzow
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Proposed Attorneys for Debtor